# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMAI KAYSENA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant.<br>_____/ | Case No.  1:12-cv-01291-AWI-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT THE ALJ'S DECISION BE REVERSED AND THE CASE BE REMANDED FOR FURTHER PROCEEDINGS**<br><br>**OBJECTIONS DUE:  15 DAYS** |

**INTRODUCTION**

Plaintiff Samai Kaysena ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI, respectively, of the Social Security Act (the "Act").  42 U.S.C. §§ 405(g), 1383(c). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.  For the reasons set forth below, the undersigned RECOMMENDS that the ALJ's decision be REVERSED and the matter be REMANDED for further administrative proceedings.

**FACTUAL BACKGROUND**

Plaintiff was born on March 2, 1961, and completed the 6th grade in Laos. (Administrative Record ("AR") 22.) Plaintiff's last job was in automotive painting, which involving lifting 20 to 50 pounds. Plaintiff stopped working because of shoulder pain. (AR 70.) On November 26, 2007, Plaintiff applied for DIB and SSI, alleging disability since January 2, 2006, due to high blood pressure, high cholesterol, memory loss, vision and weight loss, depression, and pain throughout his body. (AR 87.)

**A.     Relevant Medical Evidence**

Plaintiff's treating physician, That Luong, M.D., referred Plaintiff for an x-ray of his right shoulder, which was taken on May 17, 2005. (AR 251.) The x-ray showed degenerative spurring of Plaintiff's right acromioclavicular joint, with no evidence of an acute fracture. (AR 251.)

On December 15, 2005, state agency physician Paul D. Casner, M.D., examined Plaintiff. (AR 148.) Plaintiff complained of pain in his right shoulder in the prior year, which led him to stop working. (AR 148.) He reported recurrent falls due to losses of consciousness; as a result of the falls, Plaintiff has hit his head and face, and has remained unconscious for up to 15 or 20 minutes. (AR 148.) These episodes began five years prior to the examination for unknown reasons; Plaintiff reported he had never had a significant head injury in the past. (AR 148.)

Upon examination of Plaintiff's right shoulder, the cross-arm test was positive and a reduced range of motion was noted. (AR 150.) Dr. Casner found Plaintiff's right shoulder pain was consistent with acromioclavicular joint strain and athrosis. (AR 150.) Based on his examination, Dr. Casner opined Plaintiff is (1) unrestricted in his ability to walk, stand, and sit in an eight-hour workday; (2) able to lift and carry 10 pounds frequently, and 20 pounds occasionally; (3) limited in his ability to push and pull due to uncontrolled hypertension; and (4) limited with his right arm in his ability to perform overhead and forward reaching. (AR 151.) He also indicated Plaintiff must avoid heights, heat sources, and open machinery due to unpredictable loss of consciousness. (AR 151.)

In January 2006, state agency physician Archimedes Garcia, M.D., reviewed Plaintiff's medical record and noted right shoulder degeneration. (AR 161.) Dr. Garcia opined Plaintiff

could lift in the medium range, but he was limited in his ability to reach in all directions with his right arm. (AR 155.) Dr. Garcia noted Plaintiff's right shoulder may improve with treatment. (AR 163.) As it pertained to Plaintiff's allegation of dizziness, Dr. Garcia noted that there were minimal complaints of dizziness in the treating physician's notes, and there was no mention of this as a recurrent problem. (AR 162.) Dr. Garcia indicated Plaintiff's subjective complaints were only partially credible because his conditions did not limit all work-related activities. (AR 162.)

In April 2008, Plaintiff sought treatment with V.S. Kaleka, M.D., for a variety of medical issues. (AR 309.) As it pertains to Plaintiff's mental health, treatment notes between April 2008 and July 2009 show Plaintiff reported insomnia, depression, anxiety, guilt feelings, changes in mood, and nightmares. (AR 295-309.)

On April 13, 2008, Greg Hirokawa, Ph.D., performed a psychological consultative examination of Plaintiff. (AR 270-74.) Dr. Hirokawa noted Plaintiff's mood was mildly depressed, his affect was restricted, and his sleep and appetite were poor. (AR 272.) He diagnosed Plaintiff with a depressive disorder not otherwise specified and with generalized anxiety. (AR 273.) As it related to his functional abilities, Dr. Hirokawa opined that Plaintiff was <u>only mildly limited</u> in his ability to (1) remember location and work-like procedures; (2) remember, understand, and carry out very short and simple instructions; (3) understand and remember detailed instructions; (4) maintain attention and concentration for extended periods of time; (5) accept instructions from a supervisor and respond appropriately to criticisms; (6) exhibit social judgment and awareness of socially appropriate behavior; (7) perform activities within a schedule, maintain regular attendance, and be punctual; (8) sustain an ordinary routine without special supervision; and (9) interact with co-workers. Dr. Hirokawa found Plaintiff <u>mildly to moderately</u> limited in his ability to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) perform at a consistent pace; and (3) withstand the stress of a routine workday and deal with various changes in the work setting. (AR 274.)

In May 2008, Plaintiff sought mental health services with the Fresno County Department of Behavioral Health. (AR 352.) Plaintiff participated in group therapy sessions between May

3

2008 and July 2009, learning how to manage his anger and develop and improve his relationships with his family members and others. (AR 310-52.)

On May 21, 2008, state agency psychiatrist Harvey Biala, M.D., reviewed Plaintiff's medical records and completed a mental residual functional capacity assessment and a psychiatric review technique form. (AR 277-79, 284-94.) Dr. Biala diagnosed Plaintiff with depressive disorder and anxiety. (AR 277-79.) As to Plaintiff's functional abilities, Dr. Biala determined Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions (AR 277), but he was not significantly limited in any other areas, including his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to respond appropriately to changes in the work setting (AR 278).

On June 19, 2009, Dr. Kaleka completed a form regarding Plaintiff's mental condition. (AR 355-59.) He noted Plaintiff suffered from insomnia, nightmares, loss of interest, fatigue, and had difficulty concentrating. (AR 355.) Dr. Kaleka diagnosed Plaintiff with a depressive syndrome marked by anhedonia, sleep disturbances, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. (AR 355.) Dr. Kaleka found Plaintiff had an impaired ability to (1) deal with the public; and (2) carry out simple one- or two-step job instructions. He opined Plaintiff had a poor ability to (1) relate and interact with supervisors or co-workers; and (2) withstand the stress and pressures of an eight-hour work day. Finally, he indicated that Plaintiff had a very poor ability to understand and carry out extensive job instructions. (AR 359.) Dr. Kaleka estimated the duration of Plaintiff's symptoms to be one year, noting that Plaintiff had demonstrated a limited response to treatment, and listed Plaintiff's prognosis as fair to guarded. (AR 359.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 77-98, 100-05.) On September 1, 2009, the ALJ held a hearing. Plaintiff testified, through the assistance of counsel, and a vocational expert ("VE") provided testimony. (AR 360-78.)

### 1. Plaintiff's Hearing Testimony

Plaintiff was born on March 2, 1961, in Laos. (AR 365.) He completed the equivalent of the sixth grade in Laos, and attended some school in the United States to learn to read a "little bit" of English; he cannot write in English, however. (AR 365.) His last job was in automotive painting, which he performed for approximately 10 years. (AR 366.) Prior to that, he performed field work on a farm. (AR 366.) He stopped working on the farm because he could not lift anything without causing pain in his arms and back. (AR 366.) He also quit his job as an automotive painter because he was unable to lift anything heavy. (AR 372.)

He has pain in his middle back and sometimes his neck, as well as pain in his right arm from his shoulder to his elbow. (AR 367.) As a result, he has difficulty reaching overhead or in front of him. (AR 367.)

He lives with his wife, son, and daughter. (AR 367-68.) Sometimes he performs household chores, but if he has pain, he will not do so. (AR 368.) He is able to watch television, but sometimes his pain lasts all day and he has to lie down. (AR 369.) He does not drive, but his children will provide him with a ride if he wants to go somewhere. He will grocery shop with his children approximately once a month. (AR 369.) He has no problems attending to his personal needs, but he requires assistance from his children to lift anything heavy. He can lift up to five or six pounds; sit for about 30 minutes to an hour; stand for 30 minutes if permitted to walk around; and walk approximately 15 minutes if permitted to rest. (AR 370.) He experiences dizziness, "everything blacks out," and he feels like he is going to faint. (AR 371.) Medication has seemed to help with the dizziness, however. (AR 371.)

He seeks treatment at Fresno County Mental Health because he gets "mad." (AR 370.) He sometimes hears voices and feels as though people are talking to him, and it makes him angry. (AR 370.) He also has a problem with memory and concentration. (AR 372.) For example, he has a problem remembering things such as his telephone number. (AR 372.)

### 2.    The VE's Hearing Testimony

The VE testified that Plaintiff's past work is classified as an auto body repairer, which is characterized by the Dictionary of Occupational Titles ("DOT") as medium exertional level work.[1] (AR 377.) The ALJ posed several hypotheticals for the VE to consider. First, the ALJ asked the VE to assume a person of Plaintiff's age, education, and work experience who could tolerate only limited contact with the general public; could never climb ladders, ropes, or scaffolds; and must avoid even moderate exposure to hazards such as unprotected heights or moving machinery. (AR 378.) The VE testified that such a person could not perform Plaintiff's past relevant work, but there was alternative work in the economy that could be performed such as dishwashing, working in laundry, or as a retail handler. (AR 375.)

Second, the ALJ asked the VE to assume a person who is limited in the same manner as the first hypothetical, but with the added limitation that the person could only occasionally reach with the right dominant upper extremity. (AR 375.) The VE testified there was no work such a person could perform. (AR 375.)

Third, the ALJ asked the VE to assume a person limited in the same manner as in the first hypothetical, but with the added limitation of being unable to maintain attention and concentration consistently throughout an eight-hour workday. (AR 376.) The VE testified that such a person would not be able to perform any work. (AR 376.)

Plaintiff's counsel asked the VE to consider a hypothetical assuming all the limitations set forth by the ALJ in the first hypothetical, but adding a mild to moderate limitation in the ability to withstand the stress of a routine workday and deal with various changes in a work setting. (AR 376.) The VE testified that if the limitation were mild, it would have no impact on the ability of the hypothetical person to perform work; however, if the limitation were moderate, the person would not be able to perform any work. (AR 377.)

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

6

### 3. The ALJ's Decision

On November 5, 2009, the ALJ issued a decision finding Plaintiff not disabled. (AR 18-29.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since January 2, 2006, the alleged date of onset; (2) has the following severe impairments: depressive disorder, anxiety disorder not otherwise specified, and intermittent explosive disorder; (3) has no impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform work at all exertional levels, but can tolerate only limited contact with the general public, and must avoid even moderate exposure to hazards such as unprotected heights or moving machinery; (5) cannot perform any past relevant work; but (6) can perform jobs that exist in significant numbers in the national economy. (AR 18-29.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 13-14.) On June 7, 2012, the Appeals Council denied review. (AR 5-8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981; 416.1481.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

7

may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

(9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.     The ALJ's Credibility Finding**

Plaintiff testified at his hearing that he has difficulty reaching forward and overhead with his right arm.  (AR 367.)  According to Plaintiff, the ALJ impermissibly discounted this statement with reasons that reflect only on Plaintiff's general credibility overall rather than stating a specific basis to discount Plaintiff's testimony regarding his shoulder limitation.  (Doc. 19, 7:5-9.)

The Commissioner contends the ALJ provided several reasons for discounting Plaintiff's statement regarding his ability to reach forward and overhead with his right arm.  The ALJ highlighted several inconsistencies in Plaintiff's reports of his symptoms; the ALJ considered the medical evidence indicating Plaintiff had only a mild range-of-motion limitation in his right shoulder and his shoulder showed no evidence of atrophy or weakness despite his stated reaching difficulties; and the ALJ discredited the physicians who opined Plaintiff had exertional and reaching limitations because those opinions were based on Plaintiff's unreliable lay reporting. (Doc. 20, 9:1-10:16.)

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ discussed Plaintiff's testimony regarding his symptoms at length, including Plaintiff's pain from his right elbow to his shoulder and his problem reaching overhead and to the front with his right arm. (AR 22.) The ALJ noted Plaintiff's reports of his symptoms were significantly inconsistent over time. For example, at his hearing, Plaintiff admitted he could care for his own personal needs, but in his December 7, 2007, statement, he denied that he could care for his personal needs. (*Compare* AR 369 *with* AR 97.) Although he claimed that he fell down due to dizziness, no fall is noted in any treating physicians' records, and there is no treatment indicated for a head injury or for dizziness. Further, Plaintiff and his nephew Vdienh Nyothoua testified that Plaintiff needed a cane at all times (AR 102, 110) – even for purposes of walking inside his home – but there is no record that a cane was ever prescribed. Moreover, at the hearing, Plaintiff appeared to have abandoned his claim of dizziness, the need for a cane, and his inability to care for his own personal needs, such as shaving or caring for his hair. (AR 27.)

Even though the inconsistent statements the ALJ described did not relate specifically to Plaintiff's shoulder, the ALJ's consideration of these inconsistencies was a permissible basis to discredit Plaintiff. *See Light*, 119 F.3d at 792 ("An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony."); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may rely on ordinary techniques of credibility evaluation including prior inconsistent statements or statements that are less than candid); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (holding ALJ properly relied on inconsistent statements regarding the claimant's drinking as a basis to reject his testimony). These inconsistencies

implicate Plaintiff's reliability in reporting symptoms of pain and limitation and were properly considered by the ALJ. Plaintiff's various inconsistent statements constitute a clear and convincing basis to support the ALJ's credibility finding.

**B.     The ALJ's Consideration of the Medical Evidence**

    **1.     Dr. Casner's Opinion**

Plaintiff contends the ALJ failed to give specific and legitimate reasons to reject Dr. Casner's opinion that Plaintiff is limited in his ability to reach with his right arm. Plaintiff argues his difficulty with right-arm reaching is established by x-rays showing acromioclavicular degeneration and by Dr. Casner's examination findings of reduced range of motion, positive cross arm testing, and positive supraspinatus testing in Plaintiff's right shoulder. Plaintiff notes Dr. Garcia also opined Plaintiff had reaching limitations with his right arm. Moreover, although the ALJ discredited Plaintiff's reports of pain, Plaintiff argues the ALJ did not explain what specific testimony undermined his subjective claim that he could not reach with his right arm.

As an initial matter, although Plaintiff argues the ALJ failed to give "specific and legitimate" reasons to discount Dr. Casner's opinion, Dr. Casner's opinion about Plaintiff's right shoulder limitation was not contradicted by any other physician. Rather, Dr. Garcia, the state agency non-examining physician, affirmed Dr. Casner's reaching limitation. Thus, the basis to reject Dr. Casner's opinion with regard to Plaintiff's ability to reach with his right arm must be clear and convincing. *Lester*, 81 F.3d at 830.

Here, the ALJ noted that both Dr. Casner and Dr. Garcia found exertional limitations, but determined they based their opinions in large part on Plaintiff's subjective complaints, which the ALJ discredited. For example, Dr. Casner accepted the history of dizziness and falls that Plaintiff reported, despite that Plaintiff made few complaints to his treating physician regarding dizziness and there was no record showing Plaintiff had ever been treated for a fall resulting from dizziness. The ALJ also reasoned there was no objective medical evidence upon which to base an exertional limitation. While acknowledging the 2005 x-ray finding of degeneration in Plaintiff's right shoulder with some mild loss of voluntary motion of the right shoulder, the ALJ noted there was no atrophy or loss of strength. The ALJ concluded that the shoulder problem "appears rather

minimal," and refused to credit Drs. Casner's and Garcia's opinions that Plaintiff had a reaching limitation with his right arm. (AR 27.)

The ALJ may not substitute his or her own interpretation of the medical evidence for the opinion of a medical professional. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999). In finding the medical evidence did not support the physicians' opinions, the ALJ relied on the same x-ray findings that both physicians reviewed (*see* AR 148, 161); the ALJ then simply concluded that, because there was no associated atrophy or loss of strength evidenced by the x-ray, both physicians were incorrect in assessing a reaching limitation. The ALJ, however, is not empowered to review the x-ray himself and substitute his interpretation that is contrary to the physicians. *See id.; see also Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings").

Further, the ALJ's rejection of the opinions as predicated on Plaintiff's subjective complaints is legally insufficient. Dr. Casner's opinion was based on his own examination of Plaintiff which revealed a positive cross-arm test and a "weakly positive supraspinatus test." (AR 150.) Additionally, Dr. Casner considered the May 2005 x-ray results indicating Plaintiff suffered from acromioclavicular degeneration in the right shoulder, and he found Plaintiff's statement of ongoing pain consistent with acromioclavicular joint strain and arthrosis. (AR 149, 151.) Therefore, Dr. Casner's opinion is not predicated entirely, or even to a large extent, on Plaintiff's subjective complaints of pain. In *Ryan v. Comm'r Soc. Sec. Admin.*, the appellate court held that an ALJ's own doubts about a claimant's credibility do not justify rejecting an examining physician's opinion that is based in part on the claimant's subjective complaints "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Analogous to *Ryan*, the ALJ here is not permitted to reject Dr. Casner's opinion about Plaintiff's reaching limitation simply because the ALJ found Plaintiff less than fully credible. Not only did Dr. Casner expressly find Plaintiff to be a good historian (AR 148), but his own clinical findings upon examination and the x-ray results supported his opinion. (AR 150). Under these circumstances, Plaintiff's lack of credibility was not a clear

12

and convincing basis to reject the reaching limitation opined to by Drs. Casner and Garcia.

Although Plaintiff asserts the Court should credit Dr. Casner's opinion as true and award benefits based upon the VE's testimony, neither Dr. Casner nor Dr. Garcia specified the degree of Plaintiff's reaching limitation, i.e., they both opined only that Plaintiff is "limited" in his ability to perform overhead reaching. (AR 151, 155.) Thus, while the VE testified that a person with Plaintiff's other limitations would not be able to perform work if he was also limited to "occasional reaching" with his right shoulder (AR 375-76), the extent of Plaintiff's reaching limitation is not established in the record.

The DOT defines the physical components of each job title; with respect to reaching, a job may require a worker to reach "constantly," "frequently," "occasionally," or never. "Constantly" is defined as an activity or condition that exists 2/3 or more of the time; "frequently" is defined as an activity or condition that exists from 1/3 to 2/3 of the time; "occasionally" is defined as an activity that exists up to 1/3 of the time. DICOT Appendix C, 1991 WL 688702. Ostensibly, any limitation on Plaintiff's ability to reach would preclude him from jobs requiring "constant" reaching, but it is not clear whether Plaintiff's reaching limitation precludes him from jobs that require "frequent" reaching.[2] Therefore, even crediting Drs. Casner's and Garcia's opinions regarding Plaintiff's ability to reach with his right arm, there is insufficient evidence in the record to determine the degree of Plaintiff's reaching limitation. Further administrative proceedings are required so that the ALJ may give renewed consideration to the reaching limitation opined by Drs. Casner and Garcia. If those opinions are credited, the ALJ must determine the scope of Plaintiff's reaching limitation. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (remand for immediate award of benefits required if there are no outstanding issues that need to be resolved and it is clear from the record the ALJ would be required to find the claimant disabled even if improperly rejected evidence were credited).

---

[2] The hypothetical the ALJ posed to the VE involved a limitation to only occasional reaching, from which one might extrapolate that the ALJ interpreted the reaching limitation opined to by Drs. Casner and Garcia as one for only occasional reaching. This, however, is not established by the medical evidence.

13

### 2. Dr. Hirokawa's Opinion

Plaintiff contends that Dr. Hirokawa found him "mildly to moderately limited" in his ability to withstand work stresses. The VE testified that if Plaintiff's limitation was moderate in this area, there would be no work he could perform; however, if his limitation was mild, it would not affect his ability to perform work. (AR 376-77.) Plaintiff maintains the ALJ ascribed weight to Dr. Hirokawa's opinion and the opinion, therefore, should have resulted in a finding that Plaintiff is disabled pursuant to the VE's testimony.

The Commissioner asserts only that "the ALJ properly took into account Dr. Hirakawa's opinion that Plaintiff's depression and anxiety appeared mild and resulted in essentially mid or less than moderate limitations." (Doc. 20, 10:14-17.)

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). In considering the medical evidence regarding Plaintiff's mental condition, the ALJ offered the following analysis:

> Regarding the mental aspects of the case, Mr. Kaysena's treating physicians have not referred him for psychiatric or psychological care, other than to Mental Health, where [he] is receiving group therapy and improving. His mental problems do not appear as significant as he claims. I give weight to the opinions of the consultative psychologist and the state-agency medical consultants regarding the mental aspects of Mr. Kaysena's condition. In the opinion of the consultative psychologist and in the opinion of the state-agency medical consultants, the mental problems are at most, mild. There is the same issue of credibility of the subjective complaints regarding the mental portion of the claim.

(AR 27.) The ALJ's analysis, however, fails to discuss Dr. Hirokawa's opinion that Plaintiff was "mildly to moderately" limited in his ability to withstand work stresses. The distinction between mild and moderate is material because the VE testified that if Plaintiff's limitation in this regard were only mild, there would be no impact on his ability to perform work, whereas if his limitation were moderate, he would be precluded from working. Dr. Hirokawa's opinion is ambiguous with respect to whether Plaintiff's limitation rose to the level of moderate or is more accurately characterized as mild.

There is evidence to suggest that Dr. Hirokawa's opinion should be construed as imposing a limitation more mild than moderate in nature. For example, Dr. Hirokawa assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 61, which reflects only mild limitations in functioning.[3] Dr. Hirokawa also noted he considered Plaintiff's mental condition overall to be "within the mild range." (AR 273.) Nevertheless, ambiguity in the medical evidence must be resolved by the ALJ. Because the ALJ gave weight to Dr. Hirokawa's opinion, but did not resolve this ambiguity which was made material by the VE's testimony, Dr. Hirokawa's opinion must be given renewed consideration and clarified. See *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ's duty to supplement the record is triggered by ambiguous evidence).

Moreover, the ALJ also credited Dr. Biala's opinion, but Dr. Biala found Plaintiff "not significantly limited" in his ability to withstand work stresses. In this way, Dr. Biala's opinion diverges from Dr. Hirokawa – particularly if Dr. Hirokawa's opinion is interpreted to find Plaintiff moderately limited rather than mildly limited in this regard – and creates an apparent conflict (*compare* AR 278 *with* AR 274), which the ALJ is required to resolve. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ cannot credit both opinions in this regard without first discussing the apparent conflict and resolving it, particularly in view of the VE's testimony. The Court finds this issue requires remand to the agency for further administrative proceedings.

**C.    New Evidence Submitted to the Appeals Council**

Plaintiff submitted to the Appeals Council a new report from Dr. Kaleka, Plaintiff's treating physician. The Appeals Council incorporated Dr. Kaleka's report into the record, considered it in conjunction with the record as a whole, but declined to review the ALJ's decision. Plaintiff contends Dr. Kaleka's opinion undercuts the ALJ's decision, it should be credited as true, and benefits should be awarded. (Doc. 19, 8:19-10:6.)

---

[3] The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning." *Am. Psychiatric Ass'n*, Diagnosis & Statistical Manual of Mental Disorders, Text Revision 32 (4th ed. 2000). The clinician uses a scale of zero to 100 to consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health- illness," not including impairments in functioning due to physical or environmental limitations. *Id.* at 34. A GAF score between 61 and 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning. *Id.*

Where a claimant submits "new and material evidence" to the Appeals Council relating "to the period on or before the date of the [ALJ's] decision," the Appeals Council must consider the additional evidence in determining whether to grant review. 20 C.F.R. §§404.970(b), 416.1470(b). When the evidence postdates the ALJ's decision, the Appeals Council must still consider it if it is "related to" the period before the ALJ's decision. *Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011). The Appeals Council will grant review if it finds "that the [ALJ's] action, finding, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b); 416.1470(b). Otherwise, the Appeals Council will consider the additional evidence but deny review. Pursuant to *Taylor*, when the Appeals Council considers a post-hearing treating physician opinion, it need not provide a "detailed rationale" or make any particular evidentiary findings as to why it rejected the post-hearing opinion. 659 F.3d at 1232; *see also Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996). Here, the Appeals Council considered the additional evidence from Dr. Kaleka, but denied review, rendering the ALJ's decision final. Therefore, the evidence from Dr. Kaleka is part of the administrative record for purposes of "determin[ing] whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

On June 19, 2009, Dr. Kaleka complete a form indicating, among other things, that Plaintiff had a poor ability to relate and interact with supervisors and co-workers and to withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity. (AR 359.) Plaintiff asserts that, because the VE testified a person who is moderately limited in the ability to withstand the stress of a routine workday or deal with various changes in a work setting could not work, Dr. Kaleka's opinion as to Plaintiff's limitations in this regard undercuts the ALJ's decision. (Doc. 19, 8:19-10:6.)

The Commissioner responds that the Appeals Council properly found that Dr. Kaleka's mental health form did not provide a basis for changing the ALJ's decision. (Doc. 20, 10:19-11:1.) In considering the prior reports from Dr. Kaleka, the ALJ reasoned the treating records showed sparse notes and did not support Plaintiff's disability claim. The ALJ also found that Dr. Kaleka

16

relied on Plaintiff's subjective reports in assessing his mental limitations. Thus, the Commissioner asserts it "is unlikely that Dr. Kaleka's essentially unsupported [newly submitted] opinion could change the ALJ's decision, as the latter specifically discredited Plaintiff's alleged mental symptoms." (Doc. 20, 10:25-28.)

As discussed above, Drs. Hirokawa and Biala's opinions regarding the degree to which Plaintiff is limited in his ability to tolerate workplace stressors should be given renewed consideration on remand. Dr. Kaleka's opinion is relevant to that analysis, and Plaintiff will thus have an opportunity to present Dr. Kaleka's report to the ALJ. Therefore, the Court need not consider whether Dr. Kaleka's June 19, 2009, opinion renders the ALJ's decision unsupported by substantial evidence.

Further, there is an insufficient basis to credit Dr. Kaleka's opinion as true and award benefits. *See Lester*, 81 F.3d at 834 (where ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is generally credited as a matter of law). First, the ALJ has not had an opportunity to consider Dr. Kaleka's June 19, 2009, opinion because it was submitted in the first instance to the Appeals Council. Second, Drs. Hirokawa and Biala found Plaintiff less limited than Dr. Kaleka noted with respect to his ability to tolerate workplace stressors; thus, Dr. Kaleka's opinion is not uncontroverted and the ALJ must determine in the first instance how the opinions should be weighed and the conflicts resolved.[4] Finally, the ALJ reviewed other treatment records from Dr. Kaleka's office and noted they were all signed by a physician's assistant ("PA") and did not provide much information. (AR 26-27.) For example, on July 30, 2009, a treatment note identified symptoms of insomnia, depression, anxiety, guilt feelings, changes in mood, and nightmares. (AR 295.) No details regarding the length of time Plaintiff had experienced these symptoms were provided, nor were there any notes on a course of treatment or a referral for mental health services. The same symptoms were circled in another treatment note on May 27, 2009 (AR 297), as well as on January 6, 2009 (AR 298), and

---

[4] In *Brewes*, the Ninth Circuit credited as true an opinion that was submitted in the first instance to the Appeals Council. 682 F.3d at 1163-64. However, the credited opinion in *Brewes* was not contradicted by any other medical evidence, and there was no basis in the record to reject it. *Id.* at 1164 ("Dimalanta and Stampfer's opinion that Brewes would likely miss multiple days each month was not contradicted in the record. . . . Further proceeds are not necessary here; there are no outstanding issues to be resolved.").

November 3, 2008 (AR 302).  Because the treatment notes were signed by a PA, it is not clear whether Dr. Kaleka himself treated Plaintiff.  As a result, to the extent that Dr. Kaleka relied on the PA's notes to formulate his opinion, there are few details to understand the basis for Dr. Kaleka's June 19, 2009, check-box opinion, particularly as no findings or analysis of Plaintiff's condition are provided.  Moreover, the treatment notes indicate only Plaintiff's reported mental health symptoms, which the ALJ properly rejected.  For these reasons, the Court finds it is *not* appropriate at this time to credit Dr. Kaleka's June 19, 2009, opinion as true and award benefits to Plaintiff.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and therefore RECOMMENDS that the ALJ's decision be REVERSED and the case REMANDED to the ALJ for additional administrative proceedings consistent with these findings.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 22, 2014**                    **/s/ Sheila K. Oberto**
                                         UNITED STATES MAGISTRATE JUDGE